UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KIMBERLY A. JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-00482-TAB-LJM |
| ) | |
| CAROLYN W. COLVIN Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Kimberly A. Jenkins appeals the Administrative Law Judge's denial of her application for Social Security benefits. Jenkins argues that the ALJ failed to give adequate weight to the treating physician, erred at step three, and cherry-picked the facts that support a finding of disability. For the reasons set forth below, Jenkins' brief in support of appeal [Filing No. 23] is granted and the Commissioner's decision is remanded.

**I.    Background**

Jenkins applied for disability insurance benefits and supplemental security income, alleging disability beginning June 30, 2012. Her applications were denied initially and upon reconsideration. On September 25, 2014, Jenkins testified at a hearing before an ALJ. However, the ALJ found Jenkins is not disabled and denied the application.

At step one, the ALJ found that Jenkins had no substantial gainful activity during the relevant time period. At step two, the ALJ found that Jenkins' severe impairments include rheumatoid arthritis, fibromyalgia, degenerative disc disease, lupus, obesity, and migraine headaches. At step three, the ALJ found that Jenkins does not meet or equal a listing. At step four, the ALJ found Jenkins has the RFC to:

>lift up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 2 hours of an 8-hour workday, sit for about 6 hours of an 8-hour workday, occasionally balance, stoop, kneel, crouch, crawl, and climb ladders and stairs, and must avoid concentrated exposure to wetness and workspace hazards.

[Filing No. 14-2, at ECF p. 25.] The ALJ found Jenkins is able to perform her past relevant work as a dispatcher and administrative assistant. Thus, the ALJ concluded that Jenkins is not disabled without proceeding to step five. The ALJ's decision became final when the Appeals Council denied Jenkins' request for review. This appeal followed.

## II.     Standard of Review

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). The ALJ is obliged to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore,* 743 F.3d at 1123. The ALJ, however, need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

## III.    Discussion

All roads lead to Dr. Neucks, Jenkins' treating rheumatologist at the center of all three issues on appeal. Rather than confront Dr. Neucks' opinion, the ALJ took a shortcut by simply rejecting it and affording it no weight. Cutting Dr. Neucks' opinion out of the analysis was error. If Dr. Neucks' opinion were given some weight, the record would favor a finding that Jenkins meets the listing criteria for lupus or requires a more restrictive RFC. For the reasons explained

below, the ALJ's failure to consider and confront Dr. Neucks' opinion was an error that affected at least two aspects of his opinion.

### A. Weighing Dr. Neucks' opinion

The ALJ began his analysis by pointing out that Dr. Neucks cannot make the ultimate conclusion on Jenkins' disability. Then, the ALJ summarily gave three reasons for rejecting Dr. Neucks' opinion and gave it no weight. The ALJ explained Dr. Neucks provided "only a 'check the box' opinion without any supporting clinical examination findings or other objective evidence in support his [sic] opinion." [Filing No. 14-2, at ECF p. 28.] The ALJ found Dr. Neucks' "own treatment records also document entirely normal physical examinations, with only abnormalities of limited tenderness noted on occasion." *Id.* Finally, the ALJ found Dr. Neucks' "opinion is inconsistent with the opinions of the reviewing State agency medical consultants and the consultative examiner." *Id.* Jenkins persuades the Court that these are not good reasons.

A treating physician's opinion is entitled to controlling weight as long as it is well supported by objective medical evidence and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If an ALJ does not give controlling weight to a treating physician's opinion, he must offer "good reasons" for declining to do so. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). The ALJ must then evaluate the treating physician's opinion and determine what weight to give it according to the factors set forth in § 404.1527(d). These factors are "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Id.* at 751.

The ALJ should not have found Dr. Neucks' opinion is unsupported because he utilizes a check-box form. "Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records." *Larson,* 615 F.3d at 751. The medical evidence in the record does not contradict Dr. Neucks' marked answers. A long record of lab work and treatment by Dr. Neucks supports his check-box opinion. Medical evidence from Dr. Neucks includes tests and findings of boney joints, tender points, fever, malaise, fatigue, and migraine. Moreover, regulations do not call for check-box forms to include a contemporaneous submission of, or references to, medical evidence. Dr. Neucks' use of a check-box form does not render his answers unsupported or take credibility away from the rest of his opinion. Thus, by itself, this reason for concluding Dr. Neucks' opinion is unsupported is erroneous.

Even if the check-box form were questionable, the ALJ's conclusion that Dr. Neucks' opinion is inconsistent with his own treatment records is also erroneous. First, it is difficult to review what the ALJ found inconsistent because the ALJ broadly cites to all of Dr. Neucks' treatment notes as support for his conclusion. Second, the inconsistencies alleged by the ALJ are to be expected with Jenkins' impairments. For example, the ALJ criticized Dr. Neucks for opining Jenkins has severe impairments, while reporting unremarkable physical exams. Such inconsistencies are actually consistent with Jenkins' lupus and fibromyalgia. Social Security Ruling 12-2p expressly recognizes that fibromyalgia symptoms fluctuate in intensity and may not always be present.

Furthermore, the ALJ's conclusion that Dr. Neucks' opinion is inconsistent with the agency physicians' opinions is not the same as finding it inconsistent with the record as a whole. While the ALJ found some inconsistencies between Dr. Neucks and the agency consultant and

an independent examiner, the opinions of Drs. Rau and Abraham are consistent with that of Dr. Neucks.  Thus, the ALJ's finding that Dr. Neucks' opinion is inconsistent with the agency physicians is not a direct route to his conclusion that it is not supported by the record.

  The Commissioner contends that the ALJ rejected Dr. Neucks' opinion because he had to resolve conflicting medical opinions.  The Commissioner argues that the ALJ minimally articulated his reasons, making remand inappropriate.  But in explaining how the ALJ resolved the medical evidence, the Commissioner demonstrates how the ALJ essentially played doctor by making his own conclusions about Jenkins' impairments.  For example, the Commissioner points out the ALJ rejected the treating physicians' opinions and went beyond the limitations listed in the agency opinions.  In other words, the ALJ decided to place limitations somewhere in between the medical opinions he accepted and the ones he rejected.  The ALJ must take care to rely on medical opinions and not make his own independent medical findings.  *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("This mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.").  While the ALJ can resolve conflicting opinions on Jenkins' limitations, he cannot make his own findings.  If the ALJ did not believe any of the medical opinions were accurate, he should have summoned an expert.  The ALJ must base his findings and conclusions on medical opinions and evidence in the record.

  The ALJ's decision to assign no weight to Dr. Neucks is not supported by the evidence. The regulatory factors appear to support giving Dr. Neucks' opinion more—if not controlling— weight.  The record demonstrates that Dr. Neucks regularly treated Jenkins for several years, he is a rheumatologist, and his opinions include treatment notes and charts, physical exams, MRI results, and he documents the multiple instances that he administered injections to relieve her

5

symptoms. The ALJ said nothing about these factors. The few factors the ALJ did mention—that Dr. Neucks' opinion is unsupported and inconsistent—are not conclusions supported by the record. Thus, the Commissioner's contention that the ALJ was not required to discuss every factor makes no difference. *See Elder v. Astrue*, 529 F.3d 408, 416 (7th Cir. 2008) (affirming the ALJ's discussion of two factors).

Overall, had the ALJ presented a thorough analysis of the evidence and weighed Dr. Neucks' opinion according to the regulatory factors, the Court could have upheld his conclusion. Instead, the ALJ flatly rejected Dr. Neucks' opinion with a cursory explanation lacking support in the record. This was error. On remand, the ALJ must reconsider whether the opinion of Dr. Neucks, Jenkins' treating rheumatologist, has sufficient medical support and consistency to garner controlling weight. If not, the ALJ must consider the factors set forth in § 404.1527(d) to determine how much weight to give Dr. Neucks' opinion. Regardless of the conclusion, the ALJ must explain his reasons, which must be supported by the evidence.

### B.     Step three conclusion

Remand at step three is also appropriate. At step three, the ALJ found that Jenkins' Systemic Lupus Erythematosus did not meet or equal the criteria of the listing for lupus. He explained that, "consistent with the opinions of the state agency medical consultants and the independent consultative examiner, I did not find the requisite laboratory testing, clinical abnormalities, or persistent symptoms necessary to meet the narrow criteria of Listing 14.02." [Filing No. 14-2, at ECF p. 25.] Jenkins argues that the ALJ's finding is erroneous because it provides no meaningful analysis and does not take into account all of the material evidence. Pointing to Dr. Neucks' opinion, Jenkins argues that her SLE diagnosis is established, two of her body systems are moderately severe, and she has three constitutional symptoms. The

6

Commissioner argues that the ALJ's explanation is sufficient and although the SLE diagnosis is unquestionable, the evidence fails to show the necessary symptoms and body systems. As explained below, the Court agrees with Jenkins.

At step three, the ALJ must consider whether a claimant's condition meets or equals a listing and must discuss each listing by name and offer more than a perfunctory analysis. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *see also Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (describing the "lax" standard that applies to an ALJ's analysis, which only requires minimal articulation). The claimant bears the burden of proving that his impairments satisfy or equal in severity the elements of a listed impairment. *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012).

In order to meet the listing for SLE, a claimant must satisfy the criteria in either subpart A or B of the listing. *Moore v. Astrue*, No. 1:11-cv-00247-TWP-MJD, 2012 U.S. Dist. LEXIS 133135, *16 (S.D. Ind. 2012) (citing 20 C.F.R. § 404, Subpt. P, App. 1, § 14.02). Subpart A requires medical evidence in the record establishing "a diagnosis of SLE involving two or more organs/body systems, with one of the organs/body systems involved to at least a moderate degree of severity, and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." *Id.* at *16-17.

The ALJ erred at step three because he offered only a perfunctory analysis after Jenkins carried her burden of proof. The ALJ's explanation for his conclusion that Jenkins does not meet the listing for SLE is generic and conclusory. He pointed out, but did not analyze, the opinions of the agency consultants and the independent examiner. [Filing No. 14-2, at ECF p. 25.] The ALJ did not explain why his conclusion was consistent with those opinions as opposed to the opinions of Jenkins' treating physicians. Later in his decision, the ALJ rejected Dr. Neucks'

opinion, but as just discussed, he did so erroneously.  Additionally, the ALJ did not explain why he was persuaded that Jenkins' laboratory testing, clinical abnormalities, and persistent symptoms did not meet the listing for SLE.  The best analysis the ALJ offered for concluding that Jenkins does not meet the listing is his generic statement that the listing criteria was too narrow.  [Filing No. 14-2, at ECF p. 25.]  The Commissioner argues that the ALJ is entitled to rely on the agency opinions and confirms the narrow listing criteria.  However, it is the ALJ's responsibility to build a logical bridge from the medical evidence to the conclusion, not just point to the evidence and conclude that Jenkins did not meet the listing.  Despite the deferential standard, the Court finds that the ALJ did not minimally articulate an analysis of his conclusion that Jenkins did not meet the listing for SLE.  This was error.

Remand is appropriate because Jenkins produced evidence that the ALJ could have relied on to conclude she meets the listing for SLE.  Based on the record, a reasonable ALJ could have found, (1) a diagnosis of SLE, (2) two or more organs or body systems are involved, at least to a moderate degree of severity, and (3) at least two of the constitutional symptoms or signs are present.  20 C.F.R. § 404, Subpt. P, App. 1, § 14.02.  The ALJ should have analyzed this evidence in determining whether she met the listing.

It is undisputed that Jenkins was diagnosed with SLE.  As Jenkins points out, every physician in this case, Drs. Brill, Sands, Alley, Neucks, Abraham, Rau, and Polit, concur that she has SLE.  Likewise, the Commissioner agrees Jenkins has a medically determinable diagnosis of SLE.  The Commissioner contends that Jenkins does not meet the remaining "demanding and stringent" criteria to satisfy the listing.   However, taking Dr. Neucks' opinion back into consideration, Jenkins points to enough evidence in the record that the ALJ could have relied on to conclude she meets the remaining criteria.

Evidence in the record demonstrates that two body systems are involved with Jenkins' SLE. Jenkins points to opinions by Dr. Neucks that her joints and hematology are two body systems involved with her SLE. [Filing No. 14-8, at ECF p. 31; Filing No. 14-12, at ECF p. 70.] Dr. Neucks consistently opined that Jenkins' joints are of moderate severity, as did Dr. Abraham. [Filing No. 14-10, at ECF p. 46-49.] Jenkins also points to numerous blood tests out of the normal range, which speak to the involvement of her hematology. [Filing No. 14-11, at ECF p. 18, 71; Filing No. 14-12, at ECF p. 47.] As Jenkins explains, involvement of these systems is also consistent with her history of rheumatoid arthritis.

The Commissioner contends that Jenkins' joint and hematology problems are not considered body systems under the SLE listing. The introduction to the listing explains that, "[m]ajor organ or body system involvement can include … hematologic (anemia, leukopenia, thrombocytopenia)." 20 C.F.R. § 404, Subpt. P, App. 1, 14.00(D)(1)(a). The Commissioner argues that joints are not mentioned in this introduction, thus joints do not qualify as a body system. The Commissioner also argues that Jenkins' abnormal blood work does not include anemia, leukopenia, or thrombocytopenia, and thus her hematology does not qualify as involvement of a body system. However, the use of the words "can include" demonstrates that the introduction does not provide an exhaustive list of body systems. Joints are not excluded from body systems involved with SLE, and the hematology parenthetical is not necessarily an exhaustive list of abnormal blood tests. Jenkins points to sufficient evidence in the record that requires the ALJ to at least analyze whether these are body systems involved with SLE.[1]

---

[1] For purposes of Social Security, whether joints are a body system involved in lupus is a novel question. Although the Court found an opinion by the Court of Federal Claims that, "[l]upus … can affect many body systems, including joints," *D'Angiolini v. Sec'y of Health & Human Servs.*, 122 Fed. Cl. 86, 94 (2015), the Court found no case law discussing whether joints are a body system.

Without this analysis, the ALJ fails to build a logical bridge to his conclusion.  On remand the ALJ must determine whether Jenkins' joints and hematology are qualifying body systems.

Evidence in the record also suggests that three constitutional symptoms are involved with Jenkins' SLE.  Jenkins argues that, consistent with Dr. Neucks' opinion, her SLE symptoms are severe fatigue, fever, and malaise.  [Filing No. 14-8, at ECF p. 31.]  In at least two opinions, Dr. Neucks notes Jenkins' symptoms are fever and fatigue.  [Filing No. 14-8, at ECF p. 31; Filing No. 14-12, at ECF p. 67.]  In reviewing Jenkins' symptoms, Dr. Abraham noted that she had fatigue and malaise.  [Filing No. 14-10, at ECF p. 35.]  Similarly, Dr. Rau noted that Jenkins' symptoms included fatigue.  [Filing No. 14-10, at ECF p. 4.]  As an example of fever, Jenkins points to an exam where her temperature was 100.5°F.  [Filing No. 14-8, at ECF p. 9.]  The ALJ failed to analyze this evidence or explain why he found these symptoms are not involved.

The Commissioner minimizes this evidence by pointing to instances in the record where Jenkins did not have a fever and notes that Jenkins relies on a check-box form.  The Commissioner points to a lack of evidence that Jenkins regularly experiences malaise and fatigue.  However, this does not undermine the foregoing evidence.  As noted, the ALJ erroneously discounted Dr. Neucks' opinion.  The ALJ will now have to consider the opinions by Dr. Neucks, including his check-box form, to determine whether Jenkins' symptoms were involved at step three, or give more justifiable reasons for discounting Dr. Neucks' opinion.[2]  As explained above, Drs. Abraham and Rau lend support Dr. Neucks' answers.  Furthermore, the

---

[2] The parties argue about how to interpret one mark on the check-box form.  This argument is not relevant to the Court's conclusion that the ALJ did not analyze the form at all.  However, it is mentioned because the parties spend considerable time on this argument.  To the extent that the Court interprets the mark, Jenkins' argument is persuasive.  The doctor's failure to place an "x" squarely in the box for "fever" does not mean that he was striking out the word fever.  It appears to be an affirmative action of the doctor to select fever as a symptom.

fact that Jenkins did not have a fever or fatigue at each exam does not contradict evidence in the record that she otherwise experiences these symptoms.  Ultimately, the Commissioner does not convince the Court that the record shows Jenkins did not experience these symptoms.

In conclusion, the ALJ failed to bridge the medical evidence to his conclusion that Jenkins does not meet the listing for SLE.  The ALJ's failure to provide an analysis of the SLE listing criteria was error and remand is appropriate.  The Court is unpersuaded by the Commissioner's arguments that Jenkins failed to carry her burden of proof for SLE at step three.  The evidence Jenkins and the Commissioner point to must be analyzed by the ALJ.  In its current form, the ALJ's opinion contains no discussion of this evidence for the Court to review.  On remand, the ALJ must consider the evidence of Jenkins' SLE, discuss it, and conclude whether Jenkins meets the listing.  The ALJ must provide a thorough analysis of Jenkins' body systems and constitutional symptoms before concluding whether her SLE is sufficiently severe to satisfy the requirements of the listing.  *E.g., Wright v. Astrue*, No. 1:11-CV-00389, 2012 WL 5364264, *9 (N.D. Ind. 2012).

      **C.**      **Cherry-picking the evidence**

Jenkins argues that the ALJ cherry-picked facts that support a finding of disability while he ignored evidence that points to a finding Jenkins' SLE is disabling.  Much of the alleged cherry-picking will be addressed on remand, when the ALJ reconsiders Dr. Neucks' opinion and decides whether to factor that evidence into his analysis.  Thus, the Court only briefly discusses this issue.

Jenkins points to three findings by the ALJ that she argues are the result of cherry-picking.  First, Jenkins takes issue with the ALJ's finding that, "[i]n spite of the claimant's allegations and testimony of disabling pain, weakness, numbness, and loss of mobility/dexterity

since the alleged onset date, treatment records reveal strong symptomatic control with medication and injections. (e.g. Exhibit 12F, pp. 1, 4.)" [Filing No. 14-2, at ECF p. 26.] The exhibit pages the ALJ cites are two of Jenkins' visits with Dr. Rau for treatment for migraines. On these visits, Dr. Rau noted that Jenkins' pain from her headaches was improving with medication and that Dr. Neucks was treating Jenkins for diffuse pain and SLE. As Jenkins points out, the ALJ ignored conflicting evidence from Drs. Neucks and Abraham. Furthermore, the ALJ ignored the fact that Jenkins' migraines are so painful that she requires pain management. The fact that Jenkins has some success treating her migraines with medication does not support the ALJ's finding that Jenkins' pain, weakness, numbness, and loss of mobility are strongly controlled with medication. The ALJ's finding was based on cherry-picked evidence and is not supported by the record.

Second, Jenkins takes issue with the ALJ's finding that, "while the claimant has alleged disabling numbness and tingling in her arms and hands, an EMG/NCS of her upper extremities was entirely normal." [Filing No. 14-2, at ECF p. 26.] In part, this finding is unsupported because the ALJ afforded Dr. Neucks no weight and ignored that evidence. In doing so, the ALJ failed to consider Dr. Neucks' examinations and findings that Jenkins' fingers, wrists and hands demonstrated tenderness, swelling and fullness. This will resolve on remand. More problematic, however, is the ALJ's finding that an abnormal EMG is a predicate to numbness and tingling in her arms and hands. This has no basis in the medical evidence. As discussed above, the ALJ must not play doctor. The Commissioner asks the Court to look at the ALJ's decision as a whole, but doing so does not persuade the Court that the ALJ's finding is supported by the evidence.

Finally, Jenkins takes issue with the ALJ's finding that, "other than a single narrative noting some tender points on exam, there is also no physical examination documenting tender points to support the diagnosis, let alone alleged severity, of the claimant's fibromyalgia (12F, p. 8)." [Filing No. 14-2, at ECF p. 26.] Again, the exhibit the ALJ relies on is from Jenkins' visit with Dr. Rau for treatment for headaches and neck pain. On that visit, Dr. Rau administered injections at each of Jenkins' trigger points. [Filing No. 14-10, at ECF p. 9.] However, this was not the only exam in which trigger points were found. Dr. Neucks has additional findings and opinions about Jenkins' trigger points. As just discussed, this was the result of the ALJ's erroneous consideration of Dr. Neucks' opinions. By unjustifiably rejecting and thus ignoring these findings, the ALJ cherry-picked the evidence to conclude the record fails to document Jenkins' tender points.

In conclusion, although the ALJ minimally articulated a rationale for his decision, it was the result of cherry-picking and is not supported by the record. Importantly, this issue is affected by the Court's prior finding that Dr. Neucks' opinion was impermissibly discounted. Remand is appropriate so the ALJ can reconsider the full record before drawing a conclusion on Jenkins' disability, consistent with this opinion.

## V. Conclusion

Jenkins has demonstrated that the ALJ committed reversible error. The Court grants Jenkins' brief in support of appeal [Filing No. 23] and remands the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Date: 11/23/2016

_Tim A. Baker_
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov